**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 2, 2007**

**Charles R. Fulbruge III**
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

06-60373

———————————

JIMMY CHARLES SMITH,

                                        Plaintiff-Appellant,

                    v.

THE GOODYEAR TIRE & RUBBER COMPANY; ET AL.

                                        Defendants,

THE GOODYEAR TIRE & RUBBER COMPANY

                                        Defendant-Appellee.

———————————————————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi

———————————————————————————————————

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit
Judges.

BENAVIDES, Circuit Judge:


    The question before us is whether the district court abused

its discretion by rejecting the expert testimony of a polymer

scientist regarding the cause of a particular tire's failure.  The

scientist had no expertise in tire design, manufacture, or

malfunction.  We find that the district court was within its

discretion to limit the polymer scientist's testimony, and preclude

him from testifying as to the cause of the subject tire's failure. We AFFIRM the district court's evidentiary ruling and its summary judgment.

## I.  FACTS

In 2004, Jimmy Smith was driving a 1994 pickup when a rear tire burst, leading to a collision that caused significant damage. The subject tire was a Load Range E ("LRE") manufactured by Goodyear. While the tire was seven years old and 25% of its tread life was worn at the time of the accident, Smith had purchased the tire used just over a year before the accident. He kept it as a spare until, a week before the accident, he mounted it on his truck.

Smith sued Goodyear and several other defendants, alleging that the defective design and/or manufacture of the tire caused its tread to separate, thereby directly causing his accident. To substantiate his claim, Smith retained Dr. Robert B. Moore, a polymer scientist, to testify that the tire's design or manufacture was faulty. Moore had never worked in or studied the tire industry in any capacity, nor had he ever testified as a tire expert. Indeed, he did not claim to be a tire expert. He stated that his expertise was limited exclusively to the study of polymers and their adhesive properties. Having done a brief "touch and feel" test of the tire and some internet research involving tires, Moore concluded that the tire's tread separated due to "improper bonding of the rubber skim layer to the steel belts," which could have been

2

avoided with the addition of a "nylon cap overlay." He based this conclusion almost entirely on one article he found during several hours of online research. *See* J.W. Daws, *Failure Analysis of Tire Tread Separations*, 3 PRAC. FAILURE ANALYSIS 73 (October, 2003).

Goodyear moved to strike Moore's testimony. While the district court would have allowed Moore to offer testimony regarding polymer fibers and their adhesive properties, insofar as that became relevant, it would not allow Moore to give any testimony regarding (1) the cause of the tire's failure, and (2) the proper design or manufacture of tires generally. Following that ruling, Goodyear moved for summary judgment and its motion was granted.

## II.  DISCUSSION

Smith appeals the court's order to limit Moore's testimony. Smith also argues that, Moore's testimony aside, there was a genuine issue of material fact sufficient to survive summary judgment.

### A.  Was Moore's Testimony Properly Limited?

The exclusion of expert testimony is reviewed for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142–43 (1997). "District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." *Watkins v. Telsmith, Inc.*, 121 F.3d

3

984, 988 (5th Cir. 1997) (internal quotations and citations omitted).

When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). A party seeking to introduce expert testimony must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

Moore is not a tire expert. He has never been employed in any capacity dealing with the design or manufacture of tires. He has never published any articles regarding tires nor has he ever examined a tire professionally prior to this litigation. His only experience with tires is as a consumer. *Cf. Hammond v. Coleman Co., Inc.*, 61 F. Supp. 2d 533, 541 (S.D. Miss. 1999) (opining in lantern defect case, expert "probably should be excluded simply because he has had no experience in manufacturing, designing, or testing lanterns, has conducted no tests on this lantern or any other lantern, and has never testified in a lantern case."). At most, Moore is qualified to testify that the tire's wire bonding could have been stronger with a "nylon cap overlay,"[1] but that does

---

[1] Moore presumably was unfamiliar with the existence of nylon cap overlays in tires until he read the Daws article, 3 PRAC. FAILURE ANALYSIS 73, but his background in polymer science

4

not answer the pertinent questions: Was the tire defective without one, or, was the lack of the nylon overlay the likely cause of this particular tread separation?

Nonetheless, Smith insists that "[a] tire is simply an application of the fundamental issues of polymer science." That is true in some sense, just as it is true that asbestos, heart valves, and cupcakes can all be broken down into their basic atomic particles; but that does not mean an atomic physicist is qualified to testify regarding any asbestosis, medical malpractice, or confectionary issue. It's the science's application to tires that concerns us here, and Moore has absolutely no experience applying polymer science to tires.

The relevant question in this case is whether *this tire's* failure was a result of a manufacture or design defect, as Smith claims, or of abuse and misuse of the tire, as Goodyear claims. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 154 (1999) ("The relevant issue was whether the expert could reliably determine the cause of *this* tire's separation."). Moore is not qualified to answer that question.[2]

---

probably qualified him to talk about how nylon overlays might affect the bonding of a tire's components. Accordingly, the district court's ruling would have allowed him to testify to that extent.

[2] While Moore added that his "inspection did not reveal any defects that could be caused by use and abuse of the tire over time," we have already discussed why he was unqualified to render that opinion.

The district court was well within its discretion to exclude Moore's testimony regarding the cause of the tire's failure.

B. Absent Moore's Testimony, Did a Genuine Issue of Material Fact Remain?

Moore's testimony aside, Smith argues that the district court erred in finding that there was no genuine issue of material fact sufficient to survive summary judgment. We review that determination *de novo*. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under the Mississippi Products Liability Act, applicable because this is a diversity action, Smith must show that, (1) the tire was defective at the time it left the control of the manufacturer or seller; (2) the defective condition rendered the product unreasonably dangerous to the consumer; and (3) the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought. Miss. Code Ann. § 11-1-63(a); *see also Austin v. Will-Burt Co.*, 361 F.3d 862, 866–67 (5th Cir. 2004).

Even if we assume the subject tire was defective and unreasonably dangerous when it left Goodyear's control,[3] we find no

---

[3] Smith offered documents from the National Highway Traffic Safety Administration (NHTSA) regarding an investigation of LRE tires to substantiate his claim that the model was defective. While the district court excluded those documents, we do not address whether that ruling was proper because the NHTSA documents alone would not save this case from summary judgment. Even if those documents were admissible to show that LRE tires generally are defective, Smith still presented no admissible

6

proof of proximate cause in the record.  Smith has not shown that, seven years after the tire left Goodyear's control, the failure of his tire resulted from a manufacturing and/or design defect.  Under Mississippi law, "the burden of proving that when the accident occurred there had been no substantial change in the condition in which the product left the manufacturer is upon the plaintiff." *BFGoodrich, Inc. v. Taylor*, 509 So.2d 895, 903 (Miss. 1987).  Smith had no knowledge of whether or how the subject tire had been driven on or used during the six years before he purchased it.  Given the age of the tire and its extensive wear, the court found that Smith could not carry his burden on causation.

Without Moore's testimony as to causation, which was properly excluded, we agree with the district court.  Goodyear's expert testimony, that the failure was caused by underinflation or overloading, is essentially uncontroverted.  The grant of summary judgment was proper.

### III.  CONCLUSION

We AFFIRM the district court's evidentiary ruling and its grant of summary judgment.

---

evidence suggesting that this particular tire's failure in this instance was due to such a defect.